THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:11-cv-00028-MR-DLH

| | |
|---|---|
| UNITED NATIONAL INSURANCE COMPANY, ) ) ) Plaintiff, ) ) vs. ) ) ) HORTON SALES DEVELOPMENT ) CORP., WILLIAM GREG HORTON, ) CATHRYN J. STROHM HORTON, ) and T. ALEXANDER BEARD, ) ) Defendants. ) _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Judgment on the Pleadings [Doc. 34].

**I.    PROCEDURAL BACKGROUND**

On February 9, 2011, the Plaintiff United National Insurance Company filed this declaratory judgment action seeking a determination of its rights and obligations under a commercial general liability insurance policy issued by the Plaintiff to Defendant Horton Sales Development Corporation ("Horton Sales") for damages that may be assessed against

the Defendants under a demand from the South Carolina Department of Health and Environmental Control for recovery of clean-up costs from alleged contamination of a site owned or operated by one or more of the Defendants. [Doc. 1]. On April 7, 2011, William Greg Horton and Cathryn J. Strohm Horton (collectively, "the Hortons"), appearing *pro se,* filed an Answer to the Complaint, asserting that they have no personal liability for the subject clean-up costs. [Doc. 15].

On April 6, 2011, Defendant T. Alexander Beard ("Beard"), appearing *pro se*, filed a Motion to Dismiss, alleging that this matter was not ripe for adjudication. [Doc. 11]. On September 15, 2011, the Honorable Dennis L. Howell, United States Magistrate Judge, entered a Memorandum and Recommendation, recommending that the Motion to Dismiss be denied. [Doc. 20]. On October 6, 2011, this Court entered an Order adopting the Memorandum and Recommendation and denying the Motion to Dismiss. [Doc. 21].

On October 19, 2011, Beard filed an Answer and Counterclaim to the Plaintiff's Complaint. [Doc. 22]. On November 10, 2011, the Plaintiff replied to Beard's Counterclaim. [Doc. 23].

On November 28, 2011, the Court entered an Order directing the Plaintiff to take further action with respect to the failure of Horton Sales to

2

respond to the Complaint.  [Doc. 24].  On December 1, 2011, the Plaintiff filed a Motion for Entry of Default against Horton Sales for failure to respond to the Complaint.  [Doc. 25].  On January 4, 2012, the Clerk made an entry of default against Horton Sales.  [Doc. 27].

On December 12, 2011, the Hortons filed a document entitled "Response to Civil Case No. 1:11 CV 28," asserting that their liability for the subject clean-up costs had been discharged in bankruptcy.  [Doc. 26].  On January 24, 2012, the Court entered a Pretrial Order and Case Management Plan in this case.  In that Pretrial Order, the Court directed the Plaintiff to respond to the Hortons' December 12, 2011 filing.  [Doc. 29].  On February 14, 2012, the Plaintiff filed its Response, asserting that the discharge of the Hortons' debts in bankruptcy did not bar Plaintiff's claim for declaratory judgment against them.  [Doc. 33].

Thereafter, on May 18, 2012, the Plaintiff filed a motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings.  [Doc. 34].  None of the Defendants responded to the Plaintiff's motion.  On June 11, 2012, Beard filed a cross-motion for judgment on the pleadings, or alternatively, for partial summary judgment.  [Doc. 37].  On September 14, 2012, the parties' mediator, Donald Britt, filed a Certification of Mediation Session, advising that this matter has been settled as between

the Plaintiff and Beard. [Doc. 42]. Accordingly, the Court will address the Motion for Judgment on the Pleadings only insofar as it applies to the Hortons.

On September 27, 2012, the Court entered an Order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising the Hortons of the burden they carry in responding to the Plaintiff's Motion for Judgment on the Pleadings and giving them an additional twenty-one (21) days to respond. [Doc. 43]. The Hortons have not filed any Response to the Plaintiff's Motion, and this matter is therefore ripe for disposition.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In ruling on a Rule 12(c) motion, the Court "must accept the nonmovant's allegations as true[,] viewing the facts in the light most favorable to the nonmoving party. Judgment on the pleadings should be granted if the movant is entitled to judgment as a matter of law." <u>Bradley v. Ramsey</u>, 329 F.Supp.2d 617, 622 (W.D.N.C. 2004) (citation omitted). This standard is similar to that used in ruling on a Rule 12(b)(6) motion "with the key difference being that on a 12(c) motion, the court is to consider the answer as well as the complaint."

4

Continental Cleaning Serv. v. United Parcel Serv., Inc., No. 1:09CV1056, 1999 WL 1939249, at *1 (M.D.N.C. Apr. 13, 1999) (citation and internal quotation marks omitted). Where an insurance policy is "integral to and explicitly relied upon in the complaint," the policy itself should be considered along with the factual allegations of the complaint and answer. See Colin v. Marconi Commerce Sys. Employees' Retirement Plan, 335 F.Supp.2d 590, 596 (M.D.N.C. 2004).

## III. FACTUAL BACKGROUND

### A. Demand for Recovery of Clean-up Costs

On November 18, 2010, the South Carolina Department of Health and Environmental Control ("the Department") sent a letter to Hortons Sales demanding to be reimbursed for pollution clean-up costs related to the Department's response to the release and threat of release of hazardous substances, pollutants or contaminants at the facility known as "Horton Sales Development Corporation" located in Piedmont, South Carolina ("the Site"). [Demand Letter, Doc. 1-1]. The Demand Letter indicated that the Department sought damages in the amount of $4,269,071.70 from the Defendants for recovery costs incurred by the Department for clean-up of pollution on the Site. [Id.].

The Plaintiff issued a commercial general liability insurance policy to Horton Sales, with effective dates of November 20, 1995 to November 20, 1996 ("Policy"). [Doc. 1-2]. The Policy provides coverage for damages incurred by the insured for "property damage" that occurred[1] during the policy period. [Id. at 16].

An endorsement to the Policy entitled "POLLUTION AND HEALTH HAZARD EXCLUSION" ("Pollution Exclusion") provides, in pertinent part, as follows:

> POLLUTION AND HEALTH HAZARD EXCLUSION
>
> This insurance does not apply, either for defense or indemnification, to any claim, suit or demand alleging bodily injury, including psychological injury, property damage, personal injury, advertising injury or medical payments (including any costs incurred in cleaning up, remedying or detoxifying any contamination) arising wholly or in part, directly or indirectly, from either (1) the contamination of the environment by any pollutant that is introduced at any time, anywhere, or in any way; or (2) on account of a single, continuous or intermittent or repeated exposure to, ingestion of, inhalation of or absorption of any Health Hazard.
>
> As used in this endorsement the following terms shall have the following meanings:

---

[1] Although the Plaintiff contends that there is a question as to whether the subject pollution "occurred" during the period of the Policy, for purposes of the present motion, the Plaintiff concedes the same. The Plaintiff contends that regardless of the date that "property damage" occurred, the pollution exclusion in the Policy bars coverage.

6

> "Contamination" means any unclear or unsafe or damaging or injurious or unhealthful condition, arising out of the presence of any pollutant, whether permanent or transient, in any environment...
>
> "Environment" means any natural or manmade object or feature, person, animal, crop, vegetation, area of land, body of water, underground water or water table supplies, air or air supply (whether inside or outside of any structure) and any other feature of the earth or its atmosphere, whether or not altered, developed or cultivated, whether or not any such environment was owned, controlled or occupied by any Insured.
>
> "Health Hazard" means any chemical, acid, alkali, radioactive material, or any other irritant or any pollutant or other substance, product, or waste product, or the fumes or other discharges or effects therefrom, whether liquid, gas or solid, alleged or determined to be toxic or harmful to the health of any person, plant or animal.
>
> "Pollutant" means any smoke, vapor, soot …, fumes, acids, alkalis, chemicals, liquids, solids, gases, radiation, thermal pollutants, noise or sound of any kind or any other irritant or contaminant.

[Doc. 1-2 at 15].

## IV. DISCUSSION

As a preliminary matter, the Court will address the issue of whether the Plaintiff is barred by any judgment entered by a Bankruptcy Court from presenting any claims against the Hortons in this matter.

7

A bankruptcy discharge "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any [discharged] debt as a personal liability of the debtor . . ." 11 U.S.C. § 524(a)(2). A bankruptcy discharge does not extinguish the debt itself; rather, it merely releases the debtor from personal liability for the debt. In re Edgeworth, 993 F.2d 51, 53 (5th Cir. 1993); see also 11 U.S.C. § 524(e). The debt still exists and can be collected from any other entity that might be liable, including a liability insurance carrier. In re Edgeworth, 993 F.2d at 53. Thus, a suit against a discharged debtor is not barred when the purpose of the suit is to establish the nominal liability of the debtor in order to collect from his insurance policy. Id. at 54; see also In re Castle, 289 B.R. 882, 889 (Bankr. E.D. Tenn. 2003).

In the present case, the Bankruptcy Court granted the Hortons a discharge of their debts pursuant to 11 U.S.C. § 727 on May 5, 2010. [See Discharge Order, Doc. 33-1]. Such discharge, however, does not preclude the Department from pursuing a claim against the Hortons for the purpose of collecting any insurance proceeds which may be available under the Policy. Accordingly, the Plaintiff could potentially be required to defend and/or indemnify the Hortons against any such claim pursuant to the terms of the Policy.

8

The Plaintiff has filed this action not to recover a discharged debt from the Hortons personally, but rather to seek a determination of the Plaintiff's rights and obligations under the Policy with regard to any damages that may be assessed against the Defendants in favor of the Department. As such, the Court concludes that the Plaintiff's claim for declaratory judgment against the Hortons is not barred by 11 U.S.C. § 524.

Having determined that the Plaintiff's action is not barred, the Court now turns to the Plaintiff's motion for judgment on the pleadings. A federal court sitting in diversity must apply the conflicts of law rules of the forum. Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under North Carolina law, insurance contracts are generally construed under the rule of *lex loci contractus,* which mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract. Fortune Ins. Co. v. Owens, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000). By statute, however, North Carolina has created an exception to the general rule of *lex loci contractus*. Under that exception, "[a]ll contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein." N.C. Gen. Stat. § 58-3-1; Collins & Aikman

9

Case 1:11-cv-00028-MR-DLH   Document 46   Filed 12/13/12   Page 9 of 14

Corp. v. Hartford Acc. & Indemnity Co., 335 N.C. 91, 94, 436 S.E.2d 243, 245 (1993).

In the present case, the Policy was delivered to Horton Sales Development Corp., in Flat Rock, North Carolina, at the address shown on the Declarations page of the Policy. Moreover, the interest protected by this policy, a liability insurance policy, covers the contractual liability of Horton Sales Development Corp., a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Henderson County, North Carolina. [See Complaint, Doc. 1 at 1]. Since Horton Sales Development Corp. is a resident of North Carolina, with its headquarters in this State, it has a "substantial connection" to this State. See Cananwill, Inc. v. EMAR Group, Inc., 250 B.R. 533 (M.D.N.C. 1999); Beavers v. Federal Ins. Co., 113 N.C. App. 254, 256, 437 S.E.2d 881, 882, disc. rev. denied, 336 N.C. 602, 447 S.E.2d 384 (1994). Accordingly, the Court will apply North Carolina law to this dispute.[2]

Under well-established rules of construction, North Carolina courts recognize that the interpretation of language used in an insurance policy is

---

[2] South Carolina has a similar statute providing that all insurance contracts on property, lives or interests in that State shall be deemed to be made in South Carolina. See S.C. Code Ann. § 38-61-10. Even if South Carolina were to apply to this action, however, the analysis would be the same, as South Carolina adheres to the same general principles of contract interpretation. See, e.g., Whitlock v. Stewart Title Guar. Co., 399 S.C. 610, 614-15, 732 S.E.2d 626, 628 (2012) (discussion rules of interpretation applicable to insurance contracts).

a question of law for the court. North Carolina Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95, disc. review denied, 352 N.C. 590, 544 S.E.2d 783 (2000).

> The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder. Whereas, if the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.

Dawes v. Nash County, 357 N.C. 442, 448-49, 584 S.E.2d 760, 764 (2003) (quoting Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978)).

In the present case, the Plaintiff contends that only one reasonable interpretation exists of the Policy, namely, that the Policy affords no coverage for damages that any Defendant may incur for clean-up costs sought by the Department. North Carolina courts have construed a pollution exclusion with language very similar to the language contained in the Pollution Exclusion in the United Policy. In Home Indemnity Company v. Hoechst Celanese Corp., 128 N.C. App. 226, 494 S.E.2d 768 (1998)

11

("Hoechst"), the court held that a total pollution exclusion excluded coverage for damages arising from the disposal of contaminants into the groundwater beneath the insured's plant and landfill. In that case, the United States Environmental Protection Agency had issued an administrative order directing clean up of two contaminated sites in North Carolina. After the insured paid clean-up costs of over $45 million dollars for the two sites, the insured filed suit seeking a determination that its primary insurance policies covered the pollution recovery costs. Id. at 229, 494 S.E.2d at 769-70.

In addressing the insurance coverage issues, the court first held that the insurer could rely upon language in a total pollution exclusion that predated express approval of such language from the North Carolina Insurance Commissioner. Id. at 234, 494 S.E.2d at 773. The court then held that the first type of absolute pollution exclusion contained in the insurer's policy was enforceable. Specifically, the court reasoned as follows:

> The first type, what Lloyds labels as Category I exclusions, exclude coverage for all injury or damage "caused by seepage and/or pollution and/or contamination of air, land, water and/or any other property, however caused and whenever occurring." The Category I exclusion applies based on its plain language and [the insured] does not contest its applicability. The exclusion should be

12

> enforced. We hold that summary judgment on the basis of the Category I exclusion was properly granted as to those policies containing the Category I exclusion ...

Id. at 235, 494 S.E.2d at 773-74.

The Pollution Exclusion in the Policy is substantively identical to the absolute pollution exclusion addressed in Hoechst. The Pollution Exclusion in the Policy applies broadly, regardless of the source or location of the pollution. In this case, as in Hoechst, the language of the Pollution Exclusion is clear and unambiguous. The Policy excludes coverage for contamination by a pollutant "at any time, anywhere, or in any way," whether the discharge was a single or repeated instance. [See Policy, Doc. 1-2 at 15]. Accordingly, the Court concludes that the "plain language" of the Pollution Exclusion establishes that no coverage exists under the Policy for liability incurred by Defendants for recovery costs owed to the Department. The Plaintiff is, therefore, entitled to judgment as a matter of law on the issue presented regarding the policy.

## V.  ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Judgment on the Pleadings [Doc. 34] with respect to the Defendants William Greg Horton and Cathryn J. Horton is **GRANTED**.

**IT IS FURTHER ORDERED AND DECLARED** that the subject insurance policy issued by the Plaintiff to the Defendant Horton Sales Development Corp. affords no defense or immunity for pollution recovery costs sought from the Defendants William Greg Horton and Cathryn J. Horton by the South Carolina Department of Health and Environmental Control.

**IT IS FURTHER ORDERED** that the Plaintiff shall take further action with respect to its claim against the Defendant Horton Sales Development Corp. within thirty (30) days of the entry of this Order.

**IT IS SO ORDERED.**

Signed: December 12, 2012

Martin Reidinger
United States District Judge